(94 App. Div. 413.)

### BOYD v. UNITED STATES MORTGAGE & TRUST CO. et al.

(Supreme Court, Appellate Division, First Department.   May 20, 1904.)

1. NEGLIGENCE—OWNER OF BUILDING—NEGLIGENCE OF BROKER—LIABILITY OF OWNER.

Where the owner of a building employed brokers to obtain tenants, and authorized the brokers to conduct their customers into the building, he was liable for injuries sustained by a customer while examining the building in company with the brokers, and due to their negligence.

2. PLEADING—BRINGING IN NEW PARTY—AMENDMENT—LIMITATIONS.

Code Civ. Proc. § 723, provides that the court may, in furtherance of justice, amend any process by correcting a mistake in the name of a party. or by adding or striking out the name of a person as a party, etc.   *Held*, that where one was sued, as trustee of the estate of a decedent, for injuries sustained by plaintiff while examining a building which was being erected by defendant as trustee of the estate, an amendment of the complaint, whereby the action proceeded as against the defendant individually, did not amount to the bringing in of a new party; and hence limitations ceased to run against the action when the suit was first commenced, and not when the amendment was made.

3. NEGLIGENCE—MANNER OF INJURY—RES IPSA LOQUITUR.

In an action against the owner of a building, for injuries sustained by plaintiff while she was examining the building with a view to renting an apartment therein, plaintiff testified that after entering a doorway she made a slight movement, and immediately fell, and that she did not know the distance, but she supposed that she fell into an elevator shaft or an unfinished stairway.   There was no other evidence showing the manner in which her injuries were received.   *Held*, that the evidence did not warrant an application of the principle of res ipsa loquitur.

Van Brunt, P. J., and Ingraham, J., dissenting in part.

Appeal from Trial Term.

Action by Julia S. Boyd against the United States Mortgage & Trust Company and others.   From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant the United States Mortgage & Trust Company appeals; and from a judgment dismissing the complaint as to defendants William Z. Greene and another, plaintiff appeals.   The judgment dismissing the complaint as to defendant Greene and another affirmed, and the judgment in favor of plaintiff and the order denying a new trial reversed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM and LAUGHLIN, JJ.

Theodore H. Lord, for appellant.
Howard Taylor, for plaintiff.
Samuel Levy, for respondent.

O'BRIEN, J.   The facts are sufficiently stated in the opinion of Mr. Justice INGRAHAM.   All that it is necessary for us to do is to express our views with reference to the obligation, if any, which rested on the defendants, or either of them, of seeing to it that the plaintiff, in entering the building, was not injured as the result of their neglect or careless conduct.

With respect to the mortgage company, it being the owner of the building, and there being evidence from which the inference could be

drawn that it employed the brokers to obtain tenants, and authorized them to enter the building with customers for the purpose of showing the rooms, the principle of respondeat superior applies, and for the negligence of the brokers, resulting in the plaintiff's injury, the company would be liable.

Nor do we think that there is any force in the contention that the action as against the company was barred by the statute of limitations, because of the change in the designation of the mortgage company, which was originally sued as trustee, and which designation, on motion, was stricken out, and the action continued directly against the company. That contention proceeds upon the theory that the action against the mortgage company individually was commenced by the service upon it of the amended summons and complaint, and not by the original service upon it, and hence the amendment brought into the action a new party defendant. The cases relied upon are Shaw v. Cock, 78 N. Y. 194, and Abbott v. N. Y., L. E. & W. R. Co., 120 N. Y. 652, 24 N. E. 810. In both of those cases, however, it appears that another and distinct corporation had by amendment been made a party. In the former Butterfield's Overland Dispatch was brought in by service upon Cock as its treasurer, whereas the original service was upon several individual defendants, including Cock and the Overland Dispatch Company, another joint-stock company. Although it was intended to serve the first mentioned company, against which the plaintiff had a cause of action, the service was made upon other persons, and therefore the amended summons brought in a new defendant. Similarly, in the Abbott Case, supra, the action was originally brought against Jewett as receiver of the Erie Railway Company, and the amendment brought in the New York, Lake Erie & Western Railroad Company, and in the opinion it was said that it "was a stranger, and a new corporation organized by the purchasers upon the foreclosure sale of the franchise, property, and assets of the former company," and that, "of course, the order could not change the date of the service of the summons and complaint, so as to deprive the New York, Lake Erie & Western Railroad Company of the right to avail itself of the statute of limitations." In the case at bar no new corporation or person was by the amendment brought in, the only change being in the designation of the defendant company by striking out the words "as trustee under the will of Matthew Byrnes." It was not desired to bring in any other person or corporation. The amendment was to correct the defect in the designation. In Munzinger v. Courier Company, 82 Hun, 575, 31 N. Y. Supp. 737, the rule is thus stated (headnote):

"Where one person or corporation is sued, another and different person, upon whom process has not been served, cannot be brought in as a sole defendant by way of substitution; but where there is merely a misnomer or some defect in the designation of the defendant, and a substitution or change of the party is not desired, an amendment will be allowed, changing the name of the defendant as designated to its correct name."

In that case the plaintiff sued the Courier Company for libel, and alleged that it was a domestic corporation. The original summons was served upon George Bleistein, its president. The answer admitted

that the Courier Company was the publisher of the newspaper mentioned, but denied that it was incorporated; and the summons was then amended to read, "George Bleistein as President of the Courier Company." It was said, referring to cases wherein such amendment was not allowed, on the ground that its effect was to continue the action against other and different parties, and thus substitute a new cause of action, with new and other defendants:

"In * * * these cases it will be noticed that the persons sought to be brought in were different from those upon whom process had been served; and these decisions go to the extent of holding (and very properly) that, where one person or corporation is sued, another and different person, upon whom process has not been served, cannot be brought in as a sole defendant by way of substitution."

And reference is then made to a number of cases wherein substitution was properly allowed, namely, "where the plaintiff, in ignorance of the true name of defendant," had sued by another designation, one of which was Tighe v. Pope, 16 Hun, 180, "where an action was brought against one, describing her as administratrix, and asking judgment against her as such," and "the motion was to strike out the words 'as administratrix'"; and "the court held that it should be granted, remarking that, 'whether the amendment were allowed or not, the same person will be defendant.'" The distinction to be noted between the two lines of cases is that in one the person or corporation sought to be retained as a party has been served with a summons or process, whereas in the other class it is proposed to bring in a new party, and to have the original service on another person or corporation considered as though it had been actually served upon the real party. Where an action has been commenced by proper service, as in this case, upon the party sought to be held, and there is some defect in the name or designation, the Code expressly provides that a suitable amendment may be made. Section 723, Code Civ. Proc. Here it is the same corporation, the United States Mortgage & Trust Company, which it is sought to hold, upon which service was made, and which appeared; and striking out the words "as trustee," etc., did not bring in any new company or individual that had not been served, nor was there substituted a new cause of action. The argument that a judgment against the company as trustee would not be binding upon it individually is not determinative. The same might be said in the Courier Case, supra, where the company was sued as a corporation— that the unincorporated association would not be bound by a judgment entered in the action if continued without the amendment. Nor in the Tighe Case, supra, would the defendant have been individually liable upon a judgment entered if the action had proceeded against her as an administratrix. It is that very fact which makes the amendment necessary, but the result of the amendment was not to bring in a new party. What is controlling in each case is whether or not a new party—that is, a new person or corporation—is by the amendment made a defendant. Here the mortgage company was served originally, and nothing was gained, so far as having it before the court by the new service; but, for the proper entry of the judgment against it, the designation was, upon motion, changed by striking out the words "as trus-

tee," etc. It follows that, as it was not subsequently brought in, the statute of limitations would not constitute a bar to the maintenance of the action against it.

With respect to the liability of the brokers, they, too, we think, cannot escape responsibility, if, as the result of their careless or negligent conduct, they were the direct cause of the plaintiff's injury.

The difficulty, however, in voting to affirm the judgment as against the mortgage company, and to reverse the dismissal of the complaint as against the brokers, arises from the meagerness of proof upon the question of negligence. There is nothing to show just how the injuries were caused. Whether the plaintiff was conducted into a room, the floor of which had not been completed, or into a closet without a floor, or whether she fell down a staircase, or how and in what manner her injuries were received, nowhere distinctly appears; and, although it does appear from her testimony that she fell down, there is nothing from which it can be inferred as to whether she fell a story, a foot, or merely upon the floor. Without some evidence from which the inference might be drawn that she was led into a dark room, the floor or staircase connected with which was not in order or properly placed so as to prevent her from going through or down, it seems to me that there is no proof sufficient upon which to rest a verdict holding the defendants liable for negligence. From all that appears, she may have fallen for some cause with which the defendants had nothing to do. If it appeared that in going from the hallway she was led into a dark room, and fell through some dangerous place or opening, of which the defendants were or should have been aware, then there might be force in the suggestion that the principle of res ipsa loquitur applies. The extent of her testimony, however, is that after crossing the threshold she made a slight movement, to permit the agent to pass, and immediately fell, but did not know the distance; adding, upon being asked if she fell from one floor to another, "Of course, when you go unexpectedly into space, you do not know anything." She further testified she supposed there was an elevator shaft or an unfinished stairway, but was too ill to investigate, and could not describe at all what sort of hole or trap or shaft she fell into; that the floor of the hallway was perfectly firm, and she didn't expect to be precipitated into space. She states that her greatest injuries were to her left side, and she suffered for weeks, and at the time of the accident she had great pain and bled copiously, but was not rendered unconscious. This testimony is insufficient, in failing to state definitely that the plaintiff, after going into the dark room, was precipitated any distance, or fell through an opening or a dangerous place. It may be that such is a fair inference, but from an inference thus drawn we cannot make the further inference that the defendants, or either of them, were negligent. In other words, the law does not permit the building up of inference upon inference, because that would lead to speculation instead of reasonable certainty. Here there is an absence of any certainty as to whether the plaintiff fell on the floor, or down a foot or more through an open space. She gives us, not facts, but impressions made upon her by the incident of having entered the building, and afterwards a dark room, where she fell, either because there was a dangerous opening or space, or because there was absence

of care on her own part.   Whether she fell through an opening any appreciable distance, she was unable or was not asked to state.   Her description of the accident, and her inability to state with any precision the cause of her injuries, does not warrant the application of the principle of res ipsa loquitur.   We think, therefore, that there was insufficient proof upon which to support the charge of negligence, and hence that the motion to dismiss the complaint, both as to the mortgage company and as to the brokers, for failure to show a cause of action, should have been granted.

We think that the judgment against the mortgage company and the order denying motion for a new trial should be reversed, and a new trial ordered, with costs to the company to abide the event, and that the judgment of dismissal as to the brokers should be affirmed, with costs.

HATCH and LAUGHLIN, JJ., concur.

INGRAHAM, J. (dissenting).   This action was originally brought against the United States Mortgage & Trust Company, as substituted trustee under the will of Matthew Byrnes, deceased, and William Z. Greene and Louis R. Taylor, doing business under the name of Greene & Taylor, to recover from the defendants the damages sustained by the plaintiff in consequence of their negligence in allowing an apartment house to remain in an unsafe and dangerous condition, by reason of which the plaintiff sustained injuries.   The United States Mortgage & Trust Company, as substituted trustee under the will of Matthew Byrnes, deceased, and the defendants Greene and Taylor interposed separate answers in the month of October, 1900, and the case was noticed for trial and placed on the calendar.   In May, 1903, the plaintiff made an application at Special Term to amend the summons and complaint by striking therefrom the words "as substituted trustee under the will of Matthew Byrnes, deceased," after the words "United States Mortgage & Trust Company," wherever the same occurred. This motion was denied at Special Term, but on appeal to this court that order was reversed, and an order was entered granting the plaintiff's motion to amend the summons and complaint by striking from the caption the words "as substituted trustee under the will of Matthew Byrnes, deceased," after the words "United States Mortgage & Trust Company," wherever the same occur in the caption, and providing that "the plaintiff within ten days after the entry of this order serve upon the United States Mortgage & Trust Company a copy of the amended summons and amended complaint."   In the opinion of this court allowing this amendment (84 App. Div. 466, 82 N. Y. Supp. 1001), in answer to the objection that by allowing the amendment the defense of the statute of limitations is cut off, it was said that, if such was the effect of the amendment, the court had power to grant it.   But on a subsequent appeal to this court from an order vacating an order requiring the plaintiff to give security for costs, it was held that the legal effect of the service of the amended summons and complaint upon the trust company was not determined, but that it carried with it a right to the defendant to apply for security

for costs, which could only be defeated upon the ground of waiver after the amended pleading was served, 90 App. Div. 32, 85 N. Y. Supp. 589. The plaintiff served upon the defendants an amended summons and complaint, wherein the United States Mortgage & Trust Company was sued individually, instead of as substituted trustee under the will of Matthew Byrnes, deceased. To this amended summons and complaint the defendant United States Mortgage & Trust Company interposed its individual answer, which, as a separate defense, alleged that the cause of action did not accrue at any time within three years next before the commencement of the action against it. Upon the trial the defendant trust company insisted that the action as against it individually was commenced by the service upon it of the amended summons and complaint, and, as the cause of action therein alleged accrued more than three years prior to the service of the amended summons and complaint, it was barred by the statute of limitations.

By the original complaint, the action was brought against the trustee under the will of Matthew Byrnes, deceased. No judgment was asked for against the United States Mortgage & Trust Company. The complaint alleged that the real property upon which the plaintiff was injured was owned by and in the possession of the trust company as trustee under the will of Matthew Byrnes, deceased; that the trustee had been negligent in relation to the property which it owned as trustee; and judgment was asked against the trust company as trustee, which clearly would only have bound the trust estate. No judgment in that action could have been enforced against the property of the trust company. By the amendment the plaintiff sought to enforce a cause of action against the trust company and to hold the person who had been originally sued as trustee individually liable for the damages that had been sustained by the plaintiff. The amendment in effect added to the action a new defendant, and, recognizing this, the court required that the amended summons and complaint be served personally upon the trust company, which was then for the first time brought into the action. This amendment was not to correct a mistake in the name of a defendant so as to continue the action against the individual originally intended, but was to bring in and make liable a different defendant from the one originally sought to be charged. As against the trust company individually, the effect of the service of the amended summons and complaint was to commence a new action against it. Then, for the first time, a cause of action was alleged against this defendant individually; and then, for the first time, was the corporation called upon to answer the plaintiff's demand against it. By the Code of Civil Procedure, an action can be commenced against a defendant only by the service of a summons and complaint upon it, and there was no action commenced against the trust company until the amended summons and complaint were served upon it. Then and not until then, was the trust company required to answer, and it was then entitled to set up any defense that it then had to the cause of action alleged in the complaint. It set up as a defense to that cause of action the statute of limitations, alleging that the action against it was not commenced within three years after the cause of action accrued.

The case of Shaw v. Cock, 78 N. Y. 194, is a direct authority in

support of this conclusion.   That action was originally brought against one George E. Cock, and seven other individuals named, and the Overland Dispatch Company.   George E. Cock was served with the summons and complaint, and he appeared in the action.   Thereafter a motion was made at Special Term to strike out of the summons the names of all the individual defendants, and to change it in other respects so as to make the title of the action "Michael Shaw against George E. Cock, as Treasurer of Butterfield's Overland Dispatch."   The attorney who had appeared for Cock interposed an answer of Cock, as treasurer, setting up, among other defenses, the statute of limitations; and it was held that:

"The commencement of an action against A. upon a cause of action against B. will not arrest the running of the statute against the latter.   Where several persons are jointly liable upon contract or otherwise, and a suit is brought against a part only of the persons so liable, the court has power, under section 173 of the Code, to amend the process, pleadings, or proceedings by bringing in the omitted parties, but the suit is only commenced as to such parties when they are brought in by the amendment."

And it was held that the suit against Cock as treasurer of Butterfield's Overland Dispatch Company was not commenced until he was brought in under the amended summons, and that the defense of the statute was a good answer to the cause of action.   This case was cited with approval and followed in Abbott v. N. Y., L. E. & W. R. Co., 120 N. Y. 652, 24 N. E. 810.

If we are right in this conclusion, then the action against the United States Mortgage & Trust Company was commenced by the service upon it of the amended summons and complaint, and it follows that the cause of action was barred by the statute of limitations, and that the complaint should have been dismissed.   And as this result could not be changed upon another trial, the judgment against the trust company should be reversed, and the complaint dismissed, with costs.

The plaintiff also joined as defendants William Z. Greene and Louis R. Taylor, composing the firm of Greene & Taylor, and the complaint charges them with negligence from which the injuries to the plaintiff resulted.   At the end of plaintiff's case, on motion of counsel for Greene and Taylor, the complaint was dismissed as to them; and the plaintiff appeals from that dismissal.

It appeared that in the spring of 1898 the trustee of the estate of Matthew Byrnes, deceased, made a contract with one Reilly to construct an apartment house upon the premises on the corner of Fifth avenue and Forty-Fifth street, and the construction of that building was commenced in the spring of 1898; that in October, 1898, the trustee was removed, and the defendant trust company was substituted in his place as trustee; that the contractor continued the construction of the building, and it was turned over by him to the possession of the trust company, as trustee, in February, 1900.   It also appeared that, after the trust company became the trustee, it had copies of plans of the apartment house prepared, upon which appeared the rental asked for the apartments.   A copy of these plans was furnished to the defendants Greene and Taylor, who were real estate agents, and an arrangement was made with them that if they sent to the trust company de-

sirable tenants, who were acceptable to the trust company, upon the terms stated upon the plans, they were to be paid a commission for their services in securing the tenants. After this agreement was made, a sign was placed upon the building, stating that the United States Mortgage & Trust Company, as trustee of the estate of the late Matthew Byrnes, had erected the building, and that it would be ready for occupancy on November 1, 1899, with a direction to apply for apartments to Greene & Taylor, 549 or 555 Fifth avenue. The plaintiff, who was then unmarried, living with her mother, noticing this sign, and thinking that she could secure a desirable apartment for herself and her mother, went to the office of Greene & Taylor on the afternoon of November 16, 1899, and asked an employé there about the apartments in this building. She was shown the plans, and was told that Mr. Greene was then at the building, showing it to some ladies who were looking for apartments. While she was there, Mr. Greene returned, and after some conversation she started with him to the apartment house to inspect the apartments. When she got there she found the sidewalk in front of the building still unfinished, and walked into the building upon some planks. It was then about 3 or half past 3 o'clock in the afternoon. She walked into a well-lighted hall, walking alongside of Mr. Greene. She saw a door into a lighted room, and turned to the right to go through it, when Mr. Greene said, "No, no; go straight ahead." Immediately in front of her was another doorway, into a place which seemed dark. She crossed the threshold of this door, and then stopped and said to Mr. Greene, "No; you had better go ahead." As Mr. Greene passed her to go into the room, she made a slight motion to allow him to pass, and, as she said, "Down I went." She did not know how far she fell, and did not know after the fall whether she was on the same level as that from which she had fallen. She did not know whether she had fallen down a staircase. She could not describe at all what sort of a hole or trap or shaft she had fallen into, and there was no evidence as to the condition of the house—whether or not there was a shaft or stairway or any opening in this dark room through which the plaintiff could have fallen. There were no assurances given by Greene & Taylor as to the condition of the building. An employé of Greene & Taylor's and the plaintiff entered an unfinished building. The employé directed the plaintiff to go into a dark room, and when in that room she fell. There is no evidence to show what caused her to fall. Whether there was a stairway or an elevator shaft, or a portion of the building which had not been covered with the floor, does not appear—nothing to show that the room into which the plaintiff stepped was unfinished or in an unsafe condition. Neither of the defendants was then in actual possession of the building, as the evidence is that it was turned over to the trust company by the contractor in February, 1900, some months after the accident; and neither of the defendants, therefore, was responsible for the condition of the building. The plaintiff was undoubtedly invited by Greene & Taylor to inspect the building, but it was to inspect an uncompleted building in the possession of contractors, and over which neither of the defendants exercised control. There was no representation, express or implied, that the building

was safe to inspect, or that a person who voluntarily entered it for the purpose of inspection would find it in a safe condition. It is true that this employé of Greene & Taylor invited the plaintiff to go through a doorway into a dark room, but there is no evidence to show that the room was not finished and in a safe condition. I cannot see that Greene & Taylor assumed any responsibility for the condition of this room, or that there was an implied representation that there was no stairway or other opening in the room through which a person could fall. There was no negligence on the part of Greene & Taylor in the performance of any duty which they owed to the plaintiff which could make them liable for the injury to her in consequence of this fall. It is a situation which has resulted from the plaintiff's walking into a dark room in an uncompleted building with which she was entirely unacquainted, and which was certainly not caused by the fault of the defendants Greene and Taylor. It follows that the learned trial judge was right in dismissing the complaint as to Greene and Taylor.

The judgment, so far as it dismisses the complaint as to the defendants Greene and Taylor, should be affirmed, with costs; and the judgment, so far as appealed from by the defendant United States Mortgage & Trust Company, should be reversed, and the complaint dismissed, with costs.

VAN BRUNT, P. J., concurs.